IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EULER HERMES NORTH AMERICA INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:22-CV-01127-E |
| MESTIZOS GROUP LLC, GERARDO GUILLEN, MICHELL P. TORRES, and LUIS RODRIGUEZ, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Default Judgment filed July 15, 2022 ("Plaintiff's Motion") (Doc. 17), which seeks relief against Defendants Mestizos Group LLC (Mestizos); Guillen; and Torres.[1] Having reviewed Plaintiff's Motion and the applicable law, the Court finds that Plaintiff's Motion for Default Judgment should be and is hereby **GRANTED** as follows.

## I.    BACKGROUND

On May 20, 2022, Plaintiff initiated this action against Defendants by verified complaint, alleging numerous claims (i) under the Perishable Agricultural Commodities Act (PACA); (ii) for breach of contract; (iii) for breach of guaranty agreement; (iv) for interference with receipt of trust assets; and (v) for breach of fiduciary duty. (Doc. 1 at 12-23). The Complaint alleges Mestizos entered into agreements with two companies—Produce Team, LLC (Produce Team) and London Fruit, Inc. (London Fruit), collectively referred as Assignors—in transactions involving shipments

---

[1] On July 1, 2022, Plaintiff requested the Court to terminate Defendant Rodriguez from the suit, which the Court granted. (Docs. 15, 16).

of vegetable produce. (Doc. 1). The Complaint alleges Mestizos accepted and sold the produce but did not pay the corresponding invoices from Produce Team and London Fruit. (Doc. 1).

Plaintiff asserts both Produce Team and London Fruit—both holders of USDA-issued PACA licenses—assigned all right, title, and interest in the unpaid invoices to Plaintiff, and Plaintiff insured the Assignors. (Doc. 1 at 8). The Complaint asserts (i) Mestizos "is the holder of PACA license number 20210472, which the United States Department of Agriculture (USDA) issued to Mestizos on or about February 12, 2021 and was active throughout Mestizos' dealings with the Assignors[.]" and (ii) Guillen and Torres (collectively referred as Principals) are or were both employees, officers, directors, or members of Mestizos "in a position to exercise dominion and control over Mestizos at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set forth herein" (Doc. 1 at 2-3). Regarding Produce Team, the Complaint alleges:

> 22. Between August 5 and 27, 2021, Mestizos and Produce Team, LLC ("Produce Team") entered into a series of five (5) Produce transactions involving shipments of tomatoes. At all times relevant hereto, Produce Team grew and sold Produce, specifically fresh tomatoes.
> 23. The USDA provides a list of perishable agricultural commodities covered under PACA, which includes tomatoes.
> 24. Mestizos received the Produce originating in Mexico from Produce Team at their warehouse location in McAllen, Texas. Because Produce Team delivered Produce originating in Mexico to Mestizos, through a warehouse located in McAllen, Texas in the United States, the Produce transactions at issue herein took place in interstate and foreign commerce.
> 25. Produce Team delivered Produce to Mestizos in shipments of Produce that totaled or exceeded 2,000 pounds in weight. Because Mestizos received individual shipments of produce weighing far in excess of 2,000 pounds, Mestizos was engaged in the purchase of Produce in wholesale or jobbing quantities.
> 26. At all times relevant hereto, Mestizos was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.
> 27. At all times relevant hereto, Mestizos was engaged in the business, directly or indirectly, of purchasing Produce from growers or others and distributing such Produce in commerce by resale or other methods, and, is therefore a "shipper" of Produce as defined by PACA.
> 28. Mestizos received and accepted all of the Produce from Produce Team Invoices.
> 29. Produce Team invoiced Mestizos for all of the Produce identified in the Produce Team Invoices and Mestizos agreed that, "[a]fter payment is due, interest will

accrue on unpaid balances at a rate of 18% per annum until paid," and that, "[i]n the event a legal or other action is commenced to collect sums due under this invoice, the prevailing party shall be entitled to

reimbursement of all costs and fees including reasonable attorney's fees incurred." The total amount of the Produce Team invoices assigned to Euler Hermes is $38,548.45.

30. Subsequent to Mestizos' receipt and acceptance of the Produce identified in the Produce Team Invoices, Produce Team assigned all right, title, and interest in and to the resulting unpaid Produce Team Invoices to Euler Hermes, including any and all PACA trust rights, and the right to receive payment under the Produce Team Invoices.

31. Further, on information and belief, Mestizos sold all of the Produce described in the Produce Team Invoices to third parties and collected the proceeds thereof.

(Doc. 1 at 6-8) (footnotes omitted). Regarding London Fruit, the Complaint alleges:

32. Between July 2 and August 24, 2021, Mestizos and London Fruit, Inc. ("London Fruit") entered into a series of two Produce transactions involving shipments of avocados.

33. At all times relevant hereto, London Fruit grew and sold Produce, specifically fresh avocados. The USDA provides a list of perishable agricultural commodities covered under PACA, which includes avocados.

34. Mestizos received the Produce originating in Mexico from London Fruit at their warehouse location in Pharr, Texas. Because London Fruit delivered Produce originating in

Mexico to the Mestizos, which is located in Garland, Texas in the United States, the Produce transactions at issue herein took place in interstate and foreign commerce.

35. London Fruit delivered Produce to Mestizos in shipments of Produce that totaled or exceeded 2,000 pounds in weight. Because Mestizos received individual shipments of produce weighing far in excess of 2,000 pounds, Mestizos was engaged in the purchase of Produce in wholesale or jobbing quantities.

36. At all times relevant hereto, Mestizos was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

37. At all times relevant hereto, Mestizos was engaged in the business, directly or indirectly, of purchasing Produce from growers or others and distributing such Produce in commerce by resale or other methods, and, is therefore a "shipper" of Produce as defined by PACA.

38. Mestizos received and accepted all of the Produce from London Fruit identified in the London Fruit Invoices.

39. London Fruit invoiced Mestizos for all of the Produce identified in the London Fruit Invoices. London Fruit and Mestizos agreed that, "[a]ll over due accounts accrue interest at the rate of one percent (1%) per month," and that Mestizos agreed "[t]o pay all reasonable collection costs, attorney's fees, and court costs incurred in

---

enforcing collection on this account." The total amount of the London Fruit
invoices assigned to Euler Hermes is $21,440.00.

40. To secure credit with London Fruit, Guillen entered into and executed a
personal guaranty on July 2, 2021.

41. Subsequent to Mestizos' receipt and acceptance of the Produce identified in the
London Fruit Invoices, London Fruit assigned all right, title, and interest in and to
the resulting unpaid London Fruit Invoices to Euler Hermes, including any and all
PACA trust rights, and the right to receive payment under the London Fruit
Invoices.

42. Further, on information and belief, Mestizos sold all of the Produce described
in the London Fruit Invoices to third parties and collected the proceeds thereof.

(Doc. 1 at 8-10) (footnotes omitted).

The Complaint further alleges that Assignors' respective invoices for the outstanding

balance(s)—(i) Produce Team's $38,548.45 balance at 18% per annum and (ii) London Fruit's

$21,440 balance at 12% per annum (collectively referred as Invoices)—perfected and preserved

its PACA trust rights in and to each load of Produce listed therein because each Invoice stated:

The perishable agricultural commodities listed on this invoice as sold subject to the
statutory trust authorized by Section 5(c) of the Perishable Agricultural
Commodities Act, 1930 (7 USC § 499e(c)). The seller of these commodities retains
a trust claim over these commodities, all inventories of food or other products
derived from these commodities, and any receivables or proceeds from the sale of
the commodities until full payment is received.

(Doc. 1 at 10-11). The Complaint alleges that (i) Plaintiff has the right to receive proceeds from

the Invoices and (ii) Mestizos failed to pay the total of the Invoices, despite demands from

Plaintiff's collection agent. (Doc. 1 at 11).

The Complaint alleges Mestizos—by and through its principals—engaged in bad faith

dealings with Assignors because (i) "Mestizos failed to preserve sufficient funds to fully satisfy

all qualified PACA claims"; (ii) "failed to ensure that its funds were freely available to satisfy its

outstanding obligations to" the PACA trust rights; (iii) Mestizos lacked the liquidity or free cash

flow to pay" the Invoices; and (iv) "Mestizos lacked adequate capitalization to pay its Produce

suppliers and to sustain any losses resulting from its inability to collect upon its own accounts

---

MEMORANDUM OPINION AND ORDER                                              Page **4** of **21**

receivables." (Doc. 1 at 11-12). The Complaint asserts "Mestizos improperly shifted the risk of Mestizos' undercapitalization or bad debt risk to Assignors" and that "Mestizos was insolvent." (Doc. 1 at 12).

The Court issued summons on May 23, 2022. (Doc. 7). Thereafter, Plaintiff filed proofs of service, which show Defendants Mestizos, Guillen, and Torres were served with a copy of the summons and complaint on May 24, 2022, respectively. (Docs. 10-12). Defendants did not file an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Plaintiff moved for the Clerk's entry of default on June 30, 2022, (Doc. 13), which the Clerk entered on July 1, 2022. (Doc. 14). The Complaint and Plaintiff's Motion both seek monetary damages, injunctive relief, and attorney's fees. (Docs. 1, 17). Defendants did not respond to Plaintiff's Motion. The issue is now ripe for consideration.

## II.   LEGAL STANDARD

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Thus, entry of a default judgment is within the Court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("[A] district court has the discretion to decline to enter a default judgment."). The Fifth Circuit looks to the following six factors when considering whether to enter a default judgment: (i) if the default was caused by a good faith mistake or excusable neglect; (ii) if there has been substantial prejudice; (iii) the harshness of a default judgment; (iv) if there are material issues of fact; (v) if grounds for a default judgment are clearly established; and (vi) if the court would think itself obligated to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (holding that a district court did not abuse its discretion when denying a motion for default judgment when these factors weighed against granting the motion).

The determination of whether to enter a no-answer default judgment involves a three-step analysis. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, it must be found that—after service—a defendant failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Second, the Clerk must have entered a default—after default was established by affidavit or otherwise. Fed. R. Civ. P. 55(a). Third, a plaintiff must have applied for a default judgment and proven entitlement to same. Fed. R. Civ. P. 55(b)(2) ("the party must apply to the court for a default judgment.").

### III.   ANALYSIS

#### A.  Whether Defendants Failed to Timely Plead or Otherwise Respond to the Complaint

As a prerequisite for the Defendants' obligation to answer or respond to a suit, the Court must determine whether Plaintiff properly served Defendants. Fed. R. Civ. P. 4(c). Federal Rule of Civil Procedure 4(h) describes the process for serving a corporation, partnership, or association—such as Mestizos. Fed. R. Civ. P. 4(h). If the association is served within a judicial

district of the United States, it may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A-B). Federal Rule of Civil Procedure 4(e)(1) states:

> **(e) Serving an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]

Fed. R. Civ. P. 4(e)(1). Thus, under Rule 4(e)(1), the Court looks to the Texas Rules of Civil Procedure to determine propriety of service. Fed. R. Civ. P. 4(e)(1). Under the Texas Rules of Civil Procedure, service may be effectuated by "delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition." Tex. R. Civ. P. 106(a)(1). Under Texas law, filing entities—including limited liability companies—may be served through their president, vice president, or registered agent. Tex. Bus. Orgs. Code Ann. § 5.201(b) ("The registered agent . . . is an agent of the entity on whom may be served any process, notice, or demand required or permitted by law to be served on the entity[.]"); *see also* Bus. Orgs. § 5.255(1). Texas law requires "strict compliance with the rules for service." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).[2]

Texas Rule of Civil Procedure 107 enumerates the information that must appear on the return of service. Tex. R. Civ. P. 107(b)(9), (10).

> The return of service is not a trivial, formulaic document. It has long been considered prima facie evidence of the facts recited therein. . . . . The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party."

*Primate*, 884 S.W.2d at 152 (internal citations and parentheticals omitted).

---

[2] "There are no presumptions in favor of valid issuance, service, and return of citation in the face of a writ of error attack on a default judgment." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

---

MEMORANDUM OPINION AND ORDER

Here, the return of service documents provide the summons and complaint were delivered to Defendant Mestizos by personal service on May 24, 2022. (Doc. 11). The return of service otherwise meets the requirements for effective service under Texas law. *See* Tex. R. Civ P. 106, 107. Thus, Plaintiff effectively served Defendant Mestizos in accordance with both the Federal and Texas law. *See* Fed. R. Civ. P. 4(e)(1), (h); Tex. R. Civ. P. 106(a)(1); Bus. Orgs. § 5.201(b). On the record before the Court, there is no evidence to rebut the recitations of service. *See Primate*, 884 S.W.2d at 152. The Court must conclude Plaintiff properly served Mestizos.

Regarding service on individual Defendants Guillen and Torres, Rule 4 provides for personal service of the summons on individuals by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e)(2)(a). Here, the returns of service documents provide the summons and complaint were delivered to Defendants Guillen and Torres by personal service on May 24, 2022. (Docs. 10, 12). The returns of service otherwise meet the requirements for effective service under Federal law. Fed R. Civ. P. 4(e)(2)(a); *see also* Tex. R. Civ P. 106, 107. Thus, Plaintiff effectively served Defendant Mestizos in accordance with Federal law. *See* Fed. R. Civ. P. 4(e)(2)(a). On the record before the Court, there is no evidence to rebut the recitations of service. *See* Fed. R. Civ. P. 4. The Court must conclude Plaintiff properly served Guillen and Torres.

Despite receiving proper service, the Court's docket and record show Defendants have not filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). To date, no Defendant has filed any answer or any responsive pleading in this case. Thus, the Court must also conclude that Defendants failed to timely plead or otherwise respond to the complaint under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

---

MEMORANDUM OPINION AND ORDER                                      Page **8** of **21**

### B.   Whether the Clerk Entered a Default in Accordance with Federal Rule of Civil Procedure 55

Regarding entry of a default, Federal Rule of Civil Procedure 55 states:

**(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). As concluded above, Defendants failed to plead or otherwise defend against Plaintiff's claims in this case. *See* Fed. R. Civ. P. 55(a).

Here, Plaintiff supported its request for entry of Clerk's default with a declaration from Plaintiff's counsel, Nicholas R. O'Conner. (Doc. 13-1 at 2-3). The O'Conner declaration declares, under penalty of perjury, that

> Defendants Mestizos, Guillen, and Torres were served with the summons and a copy of the Original Complaint on May 24, 2022, at 125 E. Schreiber Street, Garland, Texas 75040. Defendants Mestizos, Guillen, and Torres' answers or other response to the Original Complaint was due on or before June 15, 2022.
> I further certify that Defendants Mestizos, Guillen, and Torres have failed to serve an answer or other responsive pleading; no extension has been granted or any extension has expired; and we have no reason to believe Defendants Mestizos, Guillen, and Torres are infants (under the age of 21) or incompetent persons.
> Euler Hermes and the undersigned have determined that Defendants Mestizos, Guillen, and Torres are not in the military services.

(Doc. 13-1 at 2-3). The O'Conner declaration is otherwise consistent with the returns of service. (Docs. 10-12). Upon review of Plaintiff's request for entry of Clerk's default, the corresponding O'Conner declaration, and the returns of service, the Court must conclude the Clerk properly entered a default against Defendants in accordance with Rule 55. *See* Fed. R. Civ. P. 55(a).

### C.   Whether Plaintiff Applied for and Has Proven Entitlement to Default Judgment

#### i.       *Whether an Entry of Default Judgment is Procedurally Warranted*

Demonstrably, Plaintiff has applied for default judgment against Defendants. (Doc. 17). Next, the Court determines whether Plaintiff has proven entitlement to default judgment—

---

MEMORANDUM OPINION AND ORDER                                                    Page **9** of **21**

beginning with whether default judgment is procedurally warranted under the six *Lindsey* factors.
*See Lindsey*, 161 F.3d at 893. First, Defendants have not filed any responsive pleadings, so there
exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Const. Co. v. Houston Nat.
Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's
well-pleaded allegations of fact"). Second, Defendants' "'failure to respond threatens to bring the
adversary process to a halt, effectively prejudicing Plaintiff's interests.'" *J & J Sports Prods., Inc.
v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (quoting *Ins. Co. of the
W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)).
Third—given that Defendants have had sufficient time to file either an answer to Plaintiff's
complaint or explain why they has not done so—the grounds for default are clearly established.
*Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam)
(holding default judgment to be inappropriate where defendant sent letter to court explaining his
failure to appear was due to financial privation). Fourth, there is no evidence before the Court to
suggest Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*,
161 F.3d at 893. Fifth, Plaintiff seeks only the relief the law provides, which "mitigat[es] the
harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp.*,
Inc., No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is
not aware of any facts that would give rise to "good cause" to set aside the default if it were
challenged by Defendants. *Lindsey*, 161 F.3d at 893. For those reasons, the Court must conclude
default judgment against Defendants is procedurally warranted. *Lindsey*, 161 F.3d at 893.

     ii.     <u>*Whether There is a Sufficient Basis in the Pleadings for a Default Judgment*</u>

       Where, as here, a default has been entered under Rule 55, "the factual allegations of the
complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No.

3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).[3] And, as discussed above, the result of this default is that Defendants have admitted to Plaintiff's well-pleaded allegations of fact. *Nishimatsu*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claims for relief. *Nishimatsu*, 515 F.2d at 1206.

In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Wooten*, 788 F.3d at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Wooten*, 788 F.3d at 498 n.3. Furthermore, under Rule 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).

---

[3] *See generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

    *a)  Recovery Under PACA*

       Plaintiff first seeks liability against Defendant Mestizos under PACA. *See generally* 7 U.S.C. §§ 499a-499t. "In 1930, Congress enacted PACA to regulate the sale of perishable agricultural commodities in interstate commerce." *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *3 (N.D. Tex. July 18, 2019) (citing *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1066 (2d Cir. 1995)). "[P]erishable agricultural commodities" are defined as "[f]resh fruits and fresh vegetables of every kind and character." 7 U.S.C. § 499a(b)(4). The "PACA requires all commission merchants, dealers, and brokers in perishable agricultural commodities to be licensed," and it prohibits them "from engaging in certain unfair trade practices, including a failure to pay promptly." 7 U.S.C. § 499b(4); *Paisano Capital*, 2019 WL 3239152, at *3 (citing 7 U.S.C. § 499b(4)); *see Matter of Delta Produce, L.P.*, 845 F.3d 609, 612 (5th Cir. 2016).

       Congress strengthened the PACA's protections in 1984 to require produce buyers "to hold either the produce or all proceeds or accounts receivable from a subsequent sale of produce in trust for the benefit of unpaid sellers until 'full payment of the sums owing in connection with the transactions has been received by' the supplier." *Matter of Delta Produce*, 845 F.3d at 612–13 (citing 7 U.S.C. § 499e(c)(2)); *see Paisano Capital*, 2019 WL 3239152, at *3–4. The trust is created automatically "when the dealer [typically, the buyer] accepts the goods so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f)." *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (citation omitted); *Paisano Capital*, 2019 WL 3239152, at *4 (citing 7 U.S.C. § 499e(c)(2)). A PACA trust has five elements:

       (1) the commodities sold were perishable agricultural commodities; (2) the
      purchaser of the perishable agricultural commodities was a commission merchant,

---

MEMORANDUM OPINION AND ORDER                   Page **12** of **21**

dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

*Paisano Capital*, 2019 WL 3239152, at *4 (citing 7 U.S.C. § 499e). Pertinent here—if the notice is provided on the seller's billing or invoice statement to the buyer—the billing or invoice statement must contain the following exact language:

> "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C.A. § 499e(4) (quotations in original). Without this language, the unpaid seller loses its trust benefits unless it provides written notice as specified in 7 U.S.C. § 499e(c)(3).

If a commission merchant, dealer, or broker fails to "make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had," they "shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. §§ 499b(4), 499e(a).[4] A buyer may be held liable if it fails to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations" to its suppliers. 7 C.F.R. § 46.46(d)(1). "Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful" and subjects the dealer to liability. 7 C.F.R. § 46.46(d)(1).[5] The trust rights created by the PACA "take priority

---

[4] "'Full payment promptly' means payment within ten days after the buyer accepts the produce." *Bocchi Americas Assocs. Inc v. Com. Fresh Mktg. Inc.*, 515 F.3d 383, 388 (5th Cir. 2008) (citing 7 C.F.R. § 46.2(aa)(5),(11)).

[5] This provision regarding PACA provides:

> (1) Licensees and persons subject to license are required to maintain trust assets in a manner so that the trust assets are freely available to satisfy outstanding obligations to sellers of

over the interests of all other creditors, including secured creditors." *Patterson Frozen Foods*, 307 F.3d at 669; *see Matter of Delta Produce*, 845 F.3d at 613 (citing cases).

Liability under the PACA "may be enforced either by (1) complaint to the Secretary [of Agriculture] . . . , or (2) by suit in any court of competent jurisdiction[.]" 7 U.S.C. at §§ 499e(b), 499f(a); *see Patterson Frozen Foods*, 307 F.3d at 669. Courts have interpreted the current version of PACA as providing a cause of action only to a trust beneficiary and the Secretary of Agriculture. *E.g.*, *Jacobs Silver K Farms v. Taylor Produce, L.L.C.*, 101 F. Supp. 3d 962, 968 (D. Idaho 2015) ("[T]he plain text of PACA does not expressly provide for a private right of action for anyone other than the Secretary of Agriculture and the PACA trust beneficiaries."). Thus, to recover under PACA, Plaintiff must establish that it is a trust beneficiary, and that a PACA trust was formed.[6] *Paisano Capital*, 2019 WL 3239152, at *4.

Here, Plaintiff has established that (i) it is a trust beneficiary and (ii) a PACA trust was formed. As discussed hereabove, the record shows Plaintiff—having been assigned all all right, title, and interest from Assignors, including PACA trust rights—are entitled to proceed as a trust beneficiary for the Invoices at issue. Next, the Complaint and corresponding attachments show: (i) the commodities sold were perishable agricultural commodities of fresh tomatoes and fresh

---

perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of section 2 of the Act (7 U.S.C. 499b). Growers, licensees, and persons subject to license may file trust actions against licensees and persons operating subject to license. Licensees and persons subject to license are bound by the trust provisions of the Act (7 U.S.C. 499(e)).

7 C.F.R. § 46.46(d)(1).

[6] "General trust principles govern PACA trusts unless the principle conflicts with PACA." *Nickey Gregory Co., LLC v. AgriCap, LLC,* 597 F.3d 591, 595 (4th Cir.2010); *accord C.H. Robinson v. Alanco Corp.,* 239 F.3d 483, 487 (2d Cir.2001) ("Trusts created under PACA are statutory trusts, and common law trust principles are not applicable if they conflict with the language of the statute, the clear intent of Congress in enacting the statute, or the accompanying regulations."); *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 282 (9th Cir.1997).

---

avocados; (ii) as purchaser of the perishable agricultural commodities, Mestizos was a commission merchant, dealer, or broker—licensed under the USDA, license number 20210472; (iii) the transaction occurred in interstate or foreign commerce between Mexico and Texas; (iv) the sellers (Assignors) have not received full payment on the transaction; and (v) the sellers (Assignors) preserved their trust rights by giving written notice to the purchaser within the time provided by law, including the mandatory statutory notice language.[7] (Docs. 1, 1-1); *see* 7 U.S.C.A. § 499e(4). Thus, Plaintiff has demonstrated that a PACA trust exists. *See Paisano Capital*, 2019 WL 3239152, at *4 (citing 7 U.S.C. § 499e). Consequently, the Court must find and conclude that Plaintiff may recover under PACA.

   b) *Defendants' Liability Under PACA*

The Fifth Circuit has explained liability under PACA as follows:

> We have recognized that PACA is a "tough law". In addition to protecting consumers, Congress expressly designed it to protect the producers of perishable agricultural products, most of whom must entrust their products to a buyer who may be thousands of miles away, and depend for their payment upon his business acumen and fair dealing. An investor in a perishable commodities corporation "should know at the beginning of his association with such a corporation that he is 'buying into' a corporation which is strictly regulated by the federal government through PACA."
>
> PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities. If, however, the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable if they had some role in causing the corporate trustee to commit the breach of trust.

*Golman-Hayden Co. v. Fresh Source Produce Inc.*, 217 F.3d 348, 351 (5th Cir. 2000) (internal footnotes omitted). Furthermore, "PACA requires corporate licensees [] to list on the license all

---

[7] The record of Invoices show that the dates of the invoices were either the same day or one day after the corresponding shipment of the Produce. (Doc. 1-1 at 20-24, 73-76).

officers, directors, and holders of more than 10% of the corporation's stock." *Golman-Hayden*, 217 F.3d at 352 n.19.

Here, Mestizos' license shows "Reported Principal(s)" as Defendants Guillen and Torres. (Doc. 1-1 at 4). Furthermore, the Business Organizations Inquiry from the Texas Secretary of State show both Guillen and Torres as "Managers" of Mestizos. (Doc. 1-1 at 10). Coupled with the facts alleged in the Complaint—that Guillen and Torres had control over Mestizos' financial dealings, including the PACA trust assets—the Court finds and concludes Guillen and Torres may be jointly and severally liable with Mestizos.

   *c)  Claim for Breach of Contract*

Plaintiff further seeks recovery against Defendant Mestizos for breach of contract. Under Texas law, the elements for a breach of contract are:

> (1) a valid contract exists;
> (2) the plaintiff performed or tendered performance as contractually required;
> (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and
> (4) the plaintiff sustained damages due to the breach.

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Here, the Complaint and corresponding attachments show that (i) Mestizos entered into valid contracts with each Assignor; (ii) the Assignors performed under the contracts by delivering Produce; (iii) Mestizos breached the contract by failing to pay for the Produce; and (iv) Assignors sustained damages due to the breach in the form of unpaid invoices totaling to $59,988.45. (Doc. 1, 1-1). Thus, the Court must find and conclude Plaintiff has demonstrated each element for a breach of contract regarding both of Mestizos's agreements with Produce Team and London Fruit.

---

*d) Claim for Breach of Guaranty Agreement*

Plaintiff seeks recovery against Guillen for the personal guaranty she executed to secure credit with London Fruit. To recover pursuant to a guaranty, Plaintiff must prove:

> (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor."

*Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012) (citing *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex. App.—Dallas, 1994, no writ)).

Here, the Complaint and corresponding attachments show (i) a guaranty contract existed between Guillen and London Fruit; (ii) that Guillen would be jointly liable for all debts of Mestizos including all reasonable collection costs, attorney's fees and court costs to enforce collection; (iii) that Mestizos failed to pay under the contract and the corresponding invoices are overdue; and (iv) that Guillen has not paid under the guaranty. Thus, the Court must find and conclude Plaintiff has demonstrated each element for a breach of guaranty agreement.

In summary, the Court finds and concludes Plaintiff has shown sufficient basis in the Pleadings for recovery under PACA, for breach of contract, and for breach of guaranty agreement. The Court next addresses Plaintiff's various requests for relief.[8]

*iii.    Requests for Relief*

Plaintiff's requests for relief fall into three categories: (i) damages, including interest, from the Invoices; (ii) a permanent injunction; and (iii) attorney's fees. The Court next addresses each request for relief.

---

[8] Plaintiff's Motion does not expressly seek relief regarding its remaining counts for interference with receipt of trust assets or breach of fiduciary duty. (*See* Doc. 1 at 19-23).

---

MEMORANDUM OPINION AND ORDER                                              Page **17** of **21**

First, the Court—having entered its findings and conclusions above regarding the Invoices, recovery under PACA, breach of contract, and the guaranty agreement—must find and conclude that Plaintiff is entitled to monetary judgment against Defendants, jointly and severally. Regarding the Produce Team assignment, Plaintiff shall recover the amount of $38,548.45 with interest of 18% per annum ($19.01 per diem) from August 28, 2021, until the date of judgment from Defendants. Regarding the London Fruit assignment, Plaintiff shall recover the amount of $21,440.00 with interest of 12% per annum ($7.04 per diem) from August 26, 2021, until the date of judgment from Defendants.

Second, the Court declines to enter injunctive relief against Defendants. Although Courts have power to grant injunctions sought in motions for default judgment, the plaintiff must still demonstrate it is entitled to a permanent injunction in its particular case. *Pathway Senior Living LLC*, 2016 WL 1059536, at *4; *see* Fed. R. Civ. P. 54(c). A party seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013). Although Plaintiff asserts it has met the requirements for a permanent injunction, the Court finds and concludes that—on the record before the Court—Plaintiff has not demonstrated entitlement to such injunctive relief.

Third, the Court finds and concludes Plaintiff is entitled to its reasonable attorney's fees. The Complaint and corresponding attachments show that Assignors and Mestizos respectively agreed to reimburse the prevailing party in a legal action related to the transaction for the cost of its attorney's fees. (Doc. 1-1 at 13, 64). Furthermore, Texas Civil Practice and Remedies Code

§ 38.001 permits recovery of reasonable attorney's fees, in accordance with the Court's discretion, "if the claim is for: . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b)(8).[9] Here, the dispute at issue involves written contracts. For those reasons, the Court must find and conclude Plaintiff is entitled to award of reasonable attorney's fees.

Consistent with Texas law, the Court uses the "lodestar method," a "short hand version" of the *Arthur Andersen* factors,[10] to determine reasonable and necessary attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496, 498 (Tex. 2019). The Court first determines the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Then, the Court multiplies the number of reasonable hours counsel worked by the applicable rate to determine the lodestar, which is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos*, 578 S.W.3d at 499. The Court may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary. *Rohrmoos*, 578 S.W.3d at 500–01.

---

[9] "Under Texas law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002).

[10] These factors for determining whether an award of attorney's fees is reasonable are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment for the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citation omitted).

---

The party seeking attorney's fees has the burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Rohrmoos*, 578 S.W.3d at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services." *Rohrmoos*, 578 S.W.3d at 498.

Here, Plaintiff submitted a declaration of its counsel, O'Conner, which testified to the reasonableness and necessity of Plaintiff's attorney's fees. (Doc. 18 at 17-21). O'Conner testified to a total of $25,884.50 attorney's fees for invoiced time and $2,458.27 in invoiced expenses. (Doc. 18 at 19-20). O'conner testifies he is familiar with the usual and customary fees charged in Texas for legal services rendered in cases such as this one and is familiar with the work done to prosecute Plaintiff's claims. (Doc. 18 at 20-21). O'Conner's declaration attaches partially redacted invoices to Plaintiff for attorney's fees, which show the information required under the lodestar method and *Rohrmoos*. *See Rohrmoos*, 578 S.W.3d at 498. The Court finds that these rates are customary in the community and the fees and costs requested are reasonable and were reasonably necessary to prosecute this action. Accordingly, Plaintiff is entitled to an award of attorney's fees and costs in the amount of $28,342.77.

## IV.    CONCLUSION

For the reasons above, Plaintiff's Motion for Default Judgment, (Doc. 17), is GRANTED. It is ORDERED that default judgment be entered for Plaintiff, Euler Hermes North America Insurance Company in the amount of (i) $59,988.45 in actual damages; (ii) $14,211.33 in

interest[11]; and (iii) $28,342.77 in reasonable attorney's fees and costs. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a default judgment will issue by separate document.

**SO ORDERED.**

24th day of February, 2023.

ADA BROWN
UNITED STATES DISTRICT JUDGE

---

[11] Calculated as of August 28, 2021, and August 26, 2021, respectively.